IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BIDEMI BELLO, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | 1:10-CR-397-WSD-LTW |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:14-CV-607-WSD-LTW |

## FINAL REPORT AND RECOMMENDATION

Movant is a federal prisoner who, through counsel, challenges under 28 U.S.C. § 2255 her judgment of conviction. (Doc. 101.)[1] Respondent filed a brief opposing the motion, (Doc. 107), and Movant filed a reply, (Doc. 110). For the reasons discussed below, the undersigned recommends that Movant's motion and a certificate of appealability be denied.

## I.   Background

In October 2010, a grand jury issued a superseding indictment against Movant containing nine counts. (Doc. 12.) The first three counts charged Movant with forced domestic labor of a woman from Nigeria known as "Laome," trafficking Laome for that forced labor, and confiscating or possessing Laome's passport to commit those

---

[1] All citations to the record are to case number 1:10-cr-397-WSD-LTW.

crimes (document servitude). (*Id.* at 1-2.) The next four counts charged Movant with the same crimes as to a woman from Nigeria known as "Dupe" and with harboring Dupe, an alien, in the United States.[2] (*Id.* at 3-5.) The final two counts charged Movant with falsely stating on an application for naturalization that she had never committed a crime when she knew that she had committed the crimes regarding Laome and Dupe. (*Id.* at 5-6.)

Movant moved to dismiss the counts regarding Laome on statute of limitations grounds. (Doc. 11.) The Court denied that motion, (Doc. 32), and the case proceeded to trial in June 2011. Attorney Suzanne Hashimi was Movant's primary defense lawyer. Attorney Victoria Brunner assisted Hashimi in defending Movant at trial.

After reviewing the trial transcript, the Court finds the court of appeals' description of the evidence presented at trial accurate and helpful for present purposes:

### 1. Laome's Forced Labor

First, [Movant] recruited . . . Laome[], a 17 year old from a very poor family in Nigeria. Laome spoke no English. [Movant] promised Laome and her father that if Laome worked as [Movant's] nanny, [Movant] would pay her a monthly salary, send money to the family in Nigeria, and allow Laome to attend school in America. [Movant] brought Laome to

---

[2] The parties primarily referred to the victims by their nicknames of Laome and Dupe, rather than their full names, throughout this case. For convenience and consistency, the Court uses those nicknames here as well.

the United States illegally in October 2001 where she lived with [Movant] in a large home outside of Atlanta.

[Movant] required Laome to cook, clean, and complete daily household chores in addition to caring for T., [Movant's] baby. [Movant] denied Laome access to available tools at the home that would speed her work, such as a lawnmower, vacuum cleaner, washing machine, or dishwasher. Instead, [Movant] required Laome to cut the grass by hand, sweep the carpet with a broom, and hand-wash dishes, clothes, and diapers. [Movant] demanded that Laome clean the bathrooms and a backyard fence daily, regardless of whether they were dirty. Laome did these tasks while simultaneously caring for T; thus, Laome often carried the baby with her on her back. Laome was also responsible for caring for T. during the night if T. cried. If Laome permitted T. to cry, [Movant] would beat Laome. When she was at home, [Movant] never contributed to household upkeep or the care of her child. Over the two and a half years that Laome worked for [Movant], [Movant] never paid her directly, although she did send a total of $300 to Laome's parents. Laome never attended school as [Movant] promised.

[Movant] secured Laome's obedience and labor by abusing Laome and threatening her. If household chores did not satisfy [Movant], she hit and beat Laome with the back of her hand, a shoe, a wooden spoon, an extension cord, a belt, a hanger, a broom, or any item close at hand. On occasion, [Movant] stood on Laome's stomach while beating her. She also threatened to beat and kill Laome or send her to jail in Nigeria. [Movant] told Laome that if she answered the door or talked to the neighbors, the police would take Laome to jail. Laome believed all of [Movant's] threats. [Movant] further abused Laome by calling her dumb, stupid, poor, dirty, ugly, demonic, a slave, a witch, and a bitch. [Movant] took Laome with her to her church and told her church pastor that Laome was a witch.

[Movant] required Laome to sleep on the couch, even though the home had extra bedrooms. [Movant] forbid Laome from using any of the

3

home's bathtubs, and instead, required Laome to bathe with a bucket. [Movant] dressed Laome in her old clothes and underwear, cut her hair short against her wishes, and gave her no privacy, requiring her to change clothes in a hallway near a closet where Laome kept her belongings. [Movant] did not feed Laome well and often forced her to eat old, moldy food. If Laome threw up the food, [Movant] made her eat her vomit.

Laome could not go and come from the house as she pleased. She had no cell phone, keys to [Movant's] home, or personal money. Laome made no friends of her own in the United States. After Laome told [Movant] that Laome's father called the house, [Movant] beat and kicked her for hours and forced her to stand naked for a day with one hand and one foot on the ground and the other foot in the air. Eventually, in May 2004, Laome escaped [Movant's] home with the assistance of two of [Movant's] friends who observed the abuse.

### 2. Dupe's Forced Labor

After Laome's escape, [Movant] needed someone else to care for her home and T., so she returned to Nigeria and recruited . . . Dupe[]. Dupe also came from modest means, but she knew a little English from school. Again, [Movant] promised Dupe's father that she would treat Dupe like family and put her through school in America in exchange for Dupe's care for T., who was then about three years old. [Movant] also told Dupe's father that Dupe would be expected to help out around the house a little. Dupe's care for T. was intended to be rendered in exchange for [Movant's] providing Dupe with an education. [Movant] used false information and documents to bring Dupe illegally into the United States in the fall of 2004.

Upon arrival at [Movant's] home, [Movant] put Dupe to work and required her to constantly busy herself with housework, yard work, and childcare. Dupe usually began working around 5:00 in the morning and was not permitted to rest or have a day off. If T. woke up during the night, Dupe had to care for her. [Movant] did no childcare or chores

4

herself. As with Laome, Dupe was not allowed to use available appliances for her chores. Once, when [Movant] learned that Dupe used the washing machine and caused it to malfunction, [Movant] slapped her. [Movant] frequently slapped, hit, beat, and cursed Dupe. She insulted Dupe's family, called her stupid, a witch, and a slave. When Dupe fled from [Movant's] abuse, [Movant] would just corner her against a wall and then beat her more. More than once, [Movant] caused Dupe to bleed. Usually the beatings were for what [Movant] deemed unsatisfactory job performance, but at other times, [Movant] beat Dupe for accidents and mistakes, or for standing up for herself by talking back to [Movant]. Dupe showed marks on her face to people at [Movant's] church and told them that [Movant] beat her.

Dupe was required to sleep on the floor and bathe with a bucket, even though the house had spare bedrooms and bathrooms. [Movant] forced Dupe to cut her hair short, against her wishes. Dupe could not eat the food she prepared for [Movant]; rather, [Movant] bought Dupe cheap foods that were about to expire. On one occasion, [Movant] forced Dupe to eat spoiled leftovers.

Like Laome, Dupe was not given a key to the house or a cell phone. She could not go outside without [Movant's] permission. [Movant] tried harder to isolate Dupe than she tried with Laome, forbidding Dupe from speaking to people at her church. Like Laome, Dupe had no other contacts in America, and [Movant] did not allow Dupe to contact or be contacted by her family in Nigeria. Dupe did not believe there was anything she could do about her situation. Dupe believed that [Movant] had powerful friends in government in Nigeria who could have her or her parents arrested. As with Laome, [Movant] told Dupe that American law enforcement would put Dupe in jail or send her back to Nigeria if she ever called the police.

[Movant] never paid Dupe or her family, and she never sent Dupe to school as promised. Eventually, in the spring of 2006, Dupe escaped

5

[Movant's] home, using money given to her by [Movant's] friends to call a taxi.

*United States v. Bello*, 503 F. App'x 910, 912-13 (11th Cir. 2013).  The jury found Movant guilty on all charges except the charge of document servitude as to Dupe. (Doc. 71.)

The Court sentenced Movant to a total of 140 months imprisonment, three years' supervised release, and restitution in the amount of $144,200. (Doc. 84.)  The Court also revoked Movant's citizenship and ordered that she be remanded to immigration officials for removal proceedings after release from prison.  (*Id.*)

On appeal, Movant challenged the Court's jury instructions on the forced labor crimes.  *Bello*, 503 F. App'x at 911, 914.  The court of appeals affirmed Movant's judgment of conviction.  *Id.* at 916.  Hashimi represented Movant on appeal.

Movant contends in her § 2255 motion that Hashimi rendered ineffective assistance.  (Doc. 101 at 5-22.)  Specifically, Movant contends that Hashimi improperly failed to:

1.   follow through on a plea agreement offered by Respondent;

2.   consult with Movant on her theory of the case;

3.   interview prosecution and defense witnesses and present at trial witnesses suggested by Movant; and

6

4.      mount a credible defense and effectively cross-examine prosecution witnesses.[3]

(*Id.*) Respondent contends that Movant has not shown that Hashimi's performance was constitutionally deficient or that Movant was prejudiced by her performance. (Doc. 107.)

## II.    Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

---

[3] In her reply brief, Movant says her claims are that Hashimi was ineffective "at both the case in chief and the prosecution of her appeal." (Doc. 110 at 3.) There are no claims in the § 2255 motion regarding Hashimi's performance on appeal, however, or even any discussion of Hashimi's work on appeal. (Doc. 101.)

7

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

8

### III.   Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).  The record in this case conclusively demonstrates that Movant is not entitled to relief under § 2255.

### A.   Ground One

Movant contends that Respondent offered a plea deal of forty-one months' imprisonment and loss of citizenship.  (Doc. 101 at 8.)  Movant says that she first learned of the offer from a friend in Nigeria with whom Hashimi had communicated and that Hashimi never showed Movant a written offer despite Movant's requests. (*Id.*)

Movant provided no dates for when Respondent made the plea offer, when she learned of it from her friend, or when she discussed it with Hashimi.[4]  Nor did Movant state that she wanted to accept the forty-one month, loss of citizenship offer, which she obviously rejected.  The following allegations suggest that Movant would not have accepted that deal regardless of Hashimi's advice, or lack of advice, about it:

---

[4] The closest Movant came to providing such context was the following statement in her reply brief: "[T]his knowledge that there had been a plea offer came only at the 11th hour prior to trial."  (Doc. 110 at 7.)

AO 72A
(Rev.8/82)

"An experienced and competent defense counsel would have pursued the offered agreement with more diligence" and "as a result of defense counsel's constitutionally inadequate representation, a potential plea agreement of 36 months was never actively pursued by counsel, resulting in Petitioner being subjected to a jury trial which resulted in her receiving a sentence that was much longer than it needed to be." (*Id.* at 9, 11.) Movant's allegations suggest no more than that she did not like the offer and wanted Hashimi to try and get a better deal.

Movant cannot establish ineffective assistance of counsel by speculating that "with more diligence" Hashimi could have obtained a better plea deal, especially given that she does not state that she would have accepted any deal, even "a potential plea agreement of 36 months." (*Id.*); *see Britt v. United States*, No. 12-0173-KD-C, 2013 WL 3830083, at *8 (S.D. Ala. July 30, 2013) ("[P]etitioner's rank and conclusory speculation that his attorney could have bargained with the government for a more favorable plea agreement fails."); *Hernandez v. United States*, No. 6:10-cv-759-Orl-28, 2012 WL 728208, at *4 (M.D. Fla. Mar. 6, 2012) (rejecting § 2255 movant's ineffective assistance claim "based upon the . . . speculative premise that he would have received a favorable plea agreement from the Government if counsel had negotiated with the United States Attorney"). Movant offers nothing to support a

10

finding that Respondent would have agreed to any plea deal other than the one for forty-one months' imprisonment and loss of citizenship, much less a finding that Hashimi was constitutionally deficient in not obtaining a better offer. Even if Hashimi had pursued, to Movant's satisfaction, a deal better than the one offered by Respondent, Movant has not shown that "there is a reasonable probability that the plea [deal] would have been presented to the court (i.e., that [Movant] . . . would have accepted the plea and the prosecution would [have agreed to it)]. . . [and] that the [C]ourt would have accepted its terms." *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) (describing the test for prejudice in cases where a defendant rejects a plea deal based on bad advice from counsel).

A movant cannot satisfy her burden of demonstrating ineffective assistance of counsel with allegations that are speculative or "conclusory in nature and lacking factual substantiation." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Movant's claim in ground one offers nothing more than that. As Movant has failed to show deficient performance or prejudice, she is not entitled to relief on ground one. *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (holding that § 2255 movant had "not established facts that . . . would entitle him to relief" on his plea claim and that the "district court could have concluded from the record that [movant]

11

did not establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement").

B.     Ground Two

Movant alleges that Hashimi failed to consult with her and properly prepare for trial. (Doc. 101 at 13-16.) Movant's allegations are contradictory, at least in part. While Movant states in her § 2255 motion that Hashimi "did not even interview her client or begin trial preparations until just about two weeks before the start of the trial," (*Id.* at 13), Movant states in her reply brief that "there was no discussion between [Movant] and defense counsel until the day of trial," (Doc. 110 at 7-8).

Movant alleges that Hashimi chose to call none of the "various" people who would have testified on Movant's behalf, but she named only one such witness: Sharon Odumosu, Movant's niece. (Doc. 101 at 14.) Movant did not identify what Odumosu's testimony would have been; she said only that Odumosu was "a powerful alibi witness" and that she and other "possible defense witnesses . . . could have refuted every element of the government's case." (*Id.* at 14, 17.) When Respondent pointed out that Movant has not said what Odumosu's testimony would have been, Movant responded that she could not contact Odumosu – or anyone else – because she has been incarcerated since her arrest and that, in any event, she "has no knowledge

12

of Odumosu's current address or even if she still resides in the United States." (Doc. 110 at 10 & n.2.) In other words, there is no factual substantiation of Movant's vague and conclusory claim that Odumosu would have been a star alibi witness.[5]

"'[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Miranda v. United States*, 433 F. App'x 866, 869 (11th Cir. 2011) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision'" that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective." *Id.* (quoting *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004)). Movant's mere identification of one potential defense witness, without any description of what that witness' testimony would have been, falls far short of establishing ineffective assistance of counsel as to uncalled witnesses.

---

[5] It is unlikely that any alibi testimony from Odumosu would have been "powerful," (Doc. 101 at 17), given that Movant did not commit her crimes on a single date or at an isolated time. The evidence at trial demonstrated that Laome and Dupe each lived with Movant for multiple years and were abused throughout their stays with her. Hashimi grilled both women, particularly Dupe, about some dates when travel records indicated Movant was out of town in an effort to impeach them. By doing so, she may have established an alibi for some of the time in question, but it was undisputed that Movant was home with both women for a significant period of time.

13

Movant also contends that Hashimi was ineffective for not filing written motions for discovery, not moving to suppress pictures of Laome and Dupe that those women testified showed injuries inflicted by Movant, and not obtaining copies of Movant's passport and other travel documents until three weeks prior to trial. (Doc. 101 at 14-15.) But Movant did not identify what Hashimi should have sought in discovery, the grounds on which she could have sought to suppress the pictures, or why no competent lawyer would have obtained the travel documents as late as three weeks before trial. The range of constitutional assistance is "wide," and courts must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within" that wide range. *Strickland*, 466 U.S. at 689.

Nor has Movant shown that she was prejudiced by any of those alleged failures. Even if the jury had not seen the pictures of Laome and Dupe or Hashimi had moved early in the case for discovery of the evidence presented at trial, that evidence was overwhelming as to Movant's guilt. Again, speculative allegations lacking factual support are insufficient to satisfy Movant's burden of showing both deficient performance and prejudice. "It is not enough to [simply] show that . . . counsel could have done more." *Griffin v. United States*, 204 F. App'x 792, 795 (11th Cir. 2006). Movant is not entitled to relief on ground two.

14

C.     Ground Three

Movant repeats in ground three her allegation that Hashimi was ineffective for not calling Odumosu and other unidentified persons as witnesses at trial. (*Id.* at 16-18.) Movant also contends that Hashimi did not properly cross-examine Respondent's trial witnesses, particularly Laome and Dupe, or interview those witnesses before trial. (*Id.*) According to Movant, "the record of the trial shows that there was no clear defense strategy at trial, other than to tepidly cross-examine prosecution witnesses." (Doc. 110 at 8.)

Movant must be reading a transcript of a different trial because the undersigned's review of the transcript of Movant's trial reveals that Hashimi aggressively cross-examined Respondent's witnesses and effectively impeached some witnesses, including Laome and Dupe, on some points.  For example, Hashimi extensively challenged Laome and Dupe on their motive for waiting so long to complain to others about Movant and how their complaints furthered their efforts, as illegal aliens, to obtain asylum in the United States. (Doc. 78 at 147-84; Doc. 79 at 82-115, 125-28.)  Those are the motivations that Movant contends in her § 2255 motion made Laome and Dupe "vulnerable to cross-examination," (Doc. 101 at 16),

15

but she fails to recognize that Hashimi exposed that vulnerability through her vigorous cross-examination of the women at trial.

Hashimi extensively cross-examined Respondent's other key witnesses as well. *See, e.g.,* Doc. 79 at 220-21 (obtaining admission from prosecution witness that she used different names and social security numbers so that she could work in the United States as an illegal alien); Doc. 80 at 40-41 (obtaining admission from employee of department of family and child services that Laome was not a minor at the time the department investigated allegations about Movant's treatment of her); Doc. 80 at 87-88 (obtaining admission from FBI agent that her written report of her interview with Laome contains no mention of two of Laome's most damning allegations and that Laome did not tell the FBI of one such allegation). The record simply does not support Movant's conclusory claim that Hashimi's performance at trial was constitutionally deficient.

Movant also has not shown that she was prejudiced by Hashimi's performance at trial or her failure to interview Respondent's witnesses before trial. The record does not support a finding that it is reasonably probable that the outcome of the trial would have been different absent Hashimi's alleged deficiencies. *See Strickland*, 466 U.S. at 694. Movant is not entitled to relief on ground three.

16

D.   Ground Four

Movant again repeats, in ground four, her claim that Hashimi did not properly cross-examine Laome or Dupe or other prosecution witnesses. (Doc. 101 at 18-20.) As explained above, Movant has shown neither deficient performance nor prejudice as to that claim.

Moreover, the record refutes Movant's contention that Hashimi failed to present evidence, via cross-examination or otherwise, on certain subjects. For example, Hashimi explored Laome's and Dupe's "self-serving motivations" on cross-examination, as discussed above. And "the complete lack of medical evidence" to support Laome's and Dupe's testimony of physical abuse, (*id.* at 18), was established by those women's own testimony on *direct* examination, thus making it unnecessary for Hashimi to address it on cross-examination. (Doc. 78 at 94-95 (Laome testifying that she never went to a doctor or received medical treatment for any of her injuries); Doc. 79 at 37 (Dupe testifying that she never received medical treatment for any of her injuries).)

Hashimi also challenged the notion that Laome and Dupe had to escape from Movant's home. Laome admitted on cross-examination that she was left alone when Movant traveled out of the country and worked at others' homes during some of those

17

times.  (Doc. 78 at 160-62, 171-72.)  Hashimi questioned Laome about her ability to

do other things freely.  (*Id.*)  Dupe testified on cross-examination that she was left

alone while Movant traveled out of state on multiple occasions, visited others during

those times, and used Movant's phone to call her father and others while Movant was

away.  (Doc. 79 at 92-106.)  Hashimi also established on cross-examination that

Laome once told federal agents that she had no freedom when she lived with a woman

in Maryland after leaving Movant, similar to some of her allegations against Movant.

(Doc. 78 at 174-77.)

Movant falls far short of showing that Hashimi's cross-examination of

Respondent's trial witnesses was constitutionally deficient or that Movant was

prejudiced by Hashimi's performance.  Hashimi perhaps could have asked more

questions on cross-examination, but Movant cannot satisfy *Strickland*'s standard by

arguing that Hashimi could have done more without showing a reasonable probability

that her failure to do so affected the outcome of the trial. *See Griffin*, 204 F. App'x

at 795.  "A lawyer can almost always do something more in every case. But the

Constitution requires a good deal less than maximum performance." *Atkins v.

Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

18

Movant claims that Hashimi was deficient for not filing "substantial objections" to Respondent's motion in limine that prevented Movant from presenting evidence of Nigerian culture at trial. (Doc. 110 at 9.) The record reveals that Hashimi vigorously opposed that motion in writing and orally at the pre-trial conference. (Docs. 42, 104.) Movant has not identified what more Hashimi could or should have done to oppose the motion. As a result, Movant has not shown that Hashimi's efforts fell below that of a minimally competent lawyer or that the Court would have allowed the cultural evidence had Hashimi done more. *See Griffin*, 204 F. App'x at 795; *Bravo-Zamora v. United States*, No. 1:11cv494-MHT, 2013 WL 4851609, at *6 (M.D. Ala. Sept. 10, 2013) ("The fact that [counsel's] arguments . . . were not successful does not entitle [petitioner] to any relief based on this claim of ineffective assistance of counsel.").

In sum, most of Movant's claims are vague, devoid of factual support, and belied by the record. Movant's § 2255 motion is essentially an attempt to retry her case disguised as a claim of ineffective assistance of counsel. Movant is not entitled to relief under § 2255.

## IV.   Certificate of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28

19

U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here. Movant has not shown that she received ineffective assistance of counsel for the reasons discussed above. That conclusion is not reasonably debatable.

## V.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion challenging her judgment of conviction under 28 U.S.C. § 2255 [101] be **DENIED**

20

and that case number 1:14-cv-607-WSD-LTW be **DISMISSED**. **IT IS FURTHER**

**RECOMMENDED** that a certificate of appealability be **DENIED**.

**SO RECOMMENDED** this 25 day of February, 2015.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

21

AO 72A
(Rev.8/82)