# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **BIDEMI BELLO,** | |
| **Movant,** | **CRIMINAL ACTION NO.** <br> **1:10-cr-397-WSD** |
| **v.** | |
| **UNITED STATES OF AMERICA,** | **CIVIL ACTION NO.** <br> **1:14-cv-607-WSD** |
| **Respondent.** | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Bidemi Bello's ("Movant" or "Bello")

Objections [116] to Magistrate Judge Linda T. Walker's Final Report and

Recommendation ("R&R") [114].  The R&R recommends that Bello's Motion to

Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("2255

Motion") [101] be denied and that a certificate of appealability be denied.

## I.    BACKGROUND

On September 10, 2010, a federal grand jury returned a seven-count

indictment [5] charging Bello with two counts of forced labor, in violation of

18 U.S.C. § 1589 (Counts One and Four); two counts of trafficking with respect to

forced labor, in violation of 18 U.S.C. § 1590 (Counts Two and Five); two counts

of document servitude, in violation of 18 U.S.C. § 1592 (Counts Three and Six);

and one count of concealing or harboring an alien, in violation of 8 U.S.C.

§§ 1324(a)(1)(iii) and (B)(I) (Count Seven).  Counts One, Two and Three charged

these offenses with respect to O.O., also known as "Laome," and Counts Four,

Five and Six charged these offenses with respect to O.S., also known as "Dupe."

On October 5, 2010, the grand jury returned a superseding indictment [12]

also charging Bello with two counts of making false statements in her application

for naturalization, in violation of 18 U.S.C. § 1425(a) (Counts Eight and Nine).

This case proceeded to trial on June 6, 2011.  Bello was represented before,

and during, trial by Suzanne Hashimi ("Hashimi").  At trial, the evidence showed:

> Bello, who emigrated to the United States, took trips to her native
> country, Nigeria, where she recruited two teenage girls to work for her
> as nannies through false promises of a better life in America.  In both
> situations, Bello brought the girls into the United States illegally and
> made the girls her domestic slaves by means of physical abuse,
> psychological abuse, and various threats.  . . .

> First, Bello recruited . . . Laome [], a 17 year old from a very poor
> family in Nigeria.  Laome spoke no English.  Bello promised Laome
> and her father that if Laome worked as Bello's nanny, Bello would pay
> her a monthly salary, send money to the family in Nigeria, and allow
> Laome to attend school in America.  Bello brought Laome to the United
> States illegally in October 2001 where she lived with Bello in a large
> home outside of Atlanta.

> Bello required Laome to cook, clean, and complete daily household
> chores in addition to caring for T., Bello's baby.  Bello denied Laome
> access to available tools at the home that would speed her work, such as
> a lawnmower, vacuum cleaner, washing machine, or dishwasher.
> Instead, Bello required Laome to cut the grass by hand, sweep the
> carpet with a broom, and hand-wash dishes, clothes, and diapers.  Bello
> demanded that Laome clean the bathrooms and a backyard fence daily,
> regardless of whether they were dirty.  Laome did these tasks while

simultaneously caring for T.; thus, Laome often carried the baby with her on her back.  Laome was also responsible for caring for T. during the night if T. cried.  If Laome permitted T. to cry, Bello would beat Laome. . . .  Over the two and a half years that Laome worked for Bello, Bello never paid her directly, although she did send a total of $300 to Laome's parents.  Laome never attended school as Bello promised.

Bello secured Laome's obedience and labor by abusing Laome and threatening her.  If household chores did not satisfy Bello, she hit and beat Laome with the back of her hand, a shoe, a wooden spoon, an extension cord, a belt, a hanger, a broom, or any item close at hand.  On occasion, Bello stood on Laome's stomach while beating her.  She also threatened to beat and kill Laome or send her to jail in Nigeria.  Bello told Laome that if she answered the door or talked to the neighbors, the police would take Laome to jail.  Laome believed all of Bello's threats.  Bello further abused Laome by calling her dumb, stupid, poor, dirty, ugly, demonic, a slave, a witch, and a bitch. . . .

Bello required Laome to sleep on the couch, even though the home had extra bedrooms.  Bello forbid Laome from using any of the home's bathtubs, and instead, required Laome to bathe with a bucket.  Bello dressed Laome in her old clothes and underwear, cut her hair short against her wishes, and gave her no privacy, requiring her to change clothes in a hallway near a closet where Laome kept her belongings.  Bello did not feed Laome well and often forced her to eat old, moldy food.  If Laome threw up the food, Bello made her eat her vomit.

Laome could not go and come from the house as she pleased.  She had no cell phone, keys to Bello's home, or personal money.  Laome made no friends of her own in the United States.  After Laome told Bello that Laome's father called the house, Bello beat and kicked her for hours and forced her to stand naked for a day with one hand and one foot on the ground, and the other foot in the air.  Eventually, in May 2004, Laome escaped Bello's home with the assistance of two of Bello's friends who observed the abuse.

After Laome's escape, Bello needed someone else to care for her home and T., so she returned to Nigeria and recruited . . . Dupe [].  Dupe also came from modest means, but she knew a little English from school.

Again, Bello promised Dupe's father that she would treat Dupe like family and put her through school in America in exchange for Dupe's care for T., who was then three years old.  Bello also told Dupe's father that Dupe would be expected to help around the house a little.  Dupe's care for T. was intended to be rendered in exchange for Bello providing Dupe with an education.  Bello used false information and documents to bring Dupe illegally into the United States in the fall of 2004.

Upon arrival at Bello's home, Bello put Dupe to work and required her to constantly busy herself with housework, yard work, and childcare.  Dupe usually began working around 5:00 in the morning and was not permitted to rest or have a day off.  If T. woke up during the night, Dupe had to care for her.  Bello did no childcare or chores herself.  As with Laome, Dupe was not allowed to use available appliances for her chores.  Once, when Bello learned that Dupe used the washing machine and caused it to malfunction, Bello slapped her.

Bello frequently slapped, hit, beat, and cursed Dupe.  She insulted Dupe's family, called her stupid, a witch, and a slave.  When Dupe fled from Bello's abuse, Bello would just corner her against a wall and then beat her more.  More than once, Bello caused Dupe to bleed.  Usually the beatings were for what Bello deemed unsatisfactory job performance, but at other times, Bello beat Dupe for accidents and mistakes, or for standing up for herself by talking back to Bello.  Dupe showed marks on her face to people at Bello's church and told them that Bello beat her.

Dupe was required to sleep on the floor and bathe with a bucket, even though the house had spare bedrooms and bathrooms.  Bello forced Dupe to cut her hair short, against her wishes.  Dupe could not eat food she prepared for Bello; rather, Bello bought Dupe cheap foods that were about to expire.  On one occasion, Bello forced Dupe to eat spoiled leftovers.

Like Laome, Dupe was not given a key to the house or a cell phone.  She could not go outside without Bello's permission.  Bello tried harder to isolate Dupe than she tried with Laome, forbidding Dupe from speaking to people at her church.  Like Laome, Dupe had no other contacts in America, and Bello did not allow Dupe to contact or be contacted by her family in Nigeria.  Dupe did not believe there was

4

anything she could do about her situation.  Dupe believed that Bello had powerful friends in government in Nigeria who could have her or her parents arrested.  As with Laome, Bello told Dupe that American law enforcement would put Dupe in jail or send her back to Nigeria if she ever called the police.

Bello never paid Dupe or her family, and she never sent Dupe to school as promised.  Eventually, in the spring of 2006, Dupe escaped Bello's home, using money given to her by Bello's friends to call a taxi.

United States v. Bello, 503 F. App'x 910, 911-13 (11th Cir. 2013).

On June 10, 2011, following a five-day trial, the jury convicted Bello on Counts One through Five and Seven through Nine.[1]  ([71]).  On October 13, 2011, the Court sentenced Bello to 140 months imprisonment on Counts One, Two, Four and Five, 60 months on Count Three, and 120 months imprisonment on Counts Seven, Eight and Nine, all to run concurrently, for a total of 140 months imprisonment.  Bello was also ordered to pay restitution in the amount of $144,200, and her United States citizenship was revoked.  On January 17, 2013, the Eleventh Circuit affirmed Bello's conviction.  See Bello, 503 F. App'x 910.

On February 28, 2014, Bello, represented by new counsel, filed her 2255 Motion.  Bello asserts that Hashimi rendered ineffective assistance of counsel when she failed to (1) follow through on a plea agreement offered by the Government; (2) consult with Bello on the theory of the case; (3) interview prosecution witnesses and witnesses Bello suggested; and (4) mount a credible

---

[1]      Bello was found not guilty of document servitude regarding Dupe.

defense and effectively cross-examine prosecution witnesses.[2]

On February 26, 2015, Magistrate Judge Walker issued her R&R, recommending that Bello's 2255 Motion be denied.  The Magistrate Judge found that many of Bello's claims are not supported by the record and that Bello fails to show that Hashimi rendered ineffective assistance.  The Magistrate Judge also recommended that a certificate of appealability be denied because Bello failed to make a substantial showing of the denial of a constitutional right.

On March 11, 2015, Bello filed her Objections to the R&R.

## II.   DISCUSSION

### A.   Legal Standard on Review of an R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh

---

[2]     To the extent Bello, for the first time in her Reply, states that her claims are that Hashimi was ineffective "at both the case in chief and the prosecution of her appeal," there are no claims in the 2255 Motion regarding Hashimi's performance on appeal and Bello fails to even discuss Hashimi's work on her appeal.

consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks omitted).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

In her Objections, Bello "elects to challenge the R&R only as to the first ground," that is, ineffective assistance of counsel based on "trial counsel's failure to meaningfully communicate the Government's plea offer," and the Magistrate Judge's conclusion that an evidentiary hearing is not required on this claim.  (Objs. at 2-3).  The Court conducts a *de novo* review of these portions of the R&R, and reviews for plain error those portions of the R&R to which Bello did not object.

B.    Legal Standard on Claims of Ineffective Assistance of Counsel

"Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984)." Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010).  To show ineffective assistance of counsel, a movant must show that counsel's performance was deficient, which requires the movant to prove that "counsel's representation 'fell below an objective standard of reasonableness.'"  Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 688).  Even if a reviewing court

determines that "many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

A movant also must show that counsel's ineffectiveness prejudiced the movant. Strickland, 466 U.S. at 687. To show prejudice, a movant must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Such a reasonable probability must rise to the level of "undermin[ing] confidence in the outcome." Id. A movant is not entitled to relief if he fails to prove either deficient performance or prejudice. Id. at 697.

C.   Analysis

1.   Bello's Objections

a.   Whether counsel was ineffective in failing to follow through on a plea agreement

Bello claims that the Government offered her a plea of forty-one months imprisonment and loss of her United States citizenship, but the plea "was not initially communicated to [her] by her counsel. Rather, [Bello's] knowledge of same came from a friend in Nigeria with whom defense counsel had communicated." (2255 Motion at 8). Bello asserts that Hashimi "never showed

8

her a written plea offer, despite [her] requests . . . to see it." (Id.). Bello admits, however, that "[c]ounsel indicated, finally, that the plea offer was for 41 months with a loss of citizenship." (Id.).

The Magistrate Judge found that Bello is not entitled to relief on this claim because Bello failed to provide the dates when the Government made the plea offer, when she learned of it from her friend, or when she discussed it with Hashimi. (R&R at 9). The Magistrate Judge found further that Bello did not present any credible evidence to support that she would have accepted the offer. (Id. at 10). The Magistrate Judge observed that Bello's allegations suggest simply than she did not like the offer and wanted Hashimi to try to get a better deal. (Id.).

The Magistrate Judge concluded that Bello's speculation that "with more diligence" Hashimi could have obtained a better plea deal is not sufficient to support that Hashimi rendered ineffective assistance of counsel. (Id. at 11). The Magistrate Judge also concluded that, even if Hashimi had pursued and obtained a better deal, Bello fails to show that there is a reasonable probability that the plea would have been presented to the court, that the parties would have agreed to it, and that the court would have accepted its terms. (Id.).

In her Objections, Bello mainly reiterates her arguments that Hashimi was ineffective because she learned of the Government's plea offer from her friend, and not from Hashimi. To the extent Bello argues in her Objections that "no evidence

exist [sic] that Bello's trial counsel ever mentioned that 41-month offer to Bello"

(Objs. at 5), in her 2255 Motion, Bello stated that "[c]ounsel indicated, finally, that

the plea offer was for 41 months with a loss of citizenship," (2255 Motion at 8).

Bello's argument thus appears to be that Hashimi was ineffective because she

failed to show Bello a *written* plea offer from the Government, not that Hashimi

failed to tell Bello of the Government's plea offer.  Bello admits that "this

knowledge that there had been a plea offer came only at the 11th [sic] hour prior to

trial."  (Reply at 7).  It is clear that Bello was, at least, aware of the Government's

offer and she fails to provide any support, in law or fact, for her assertion that

Hashimi was ineffective simply because she orally communicated a plea offer,

instead of showing Bello a written plea offer—assuming a written plea offer even

existed.[3]  Bello fails to show that Hashimi's performance was deficient.

Strickland, 466 U.S. at 688.

Even if Bello could show that Hashimi's performance was deficient, Bello

cannot show that she was prejudiced by this failure.  To establish prejudice based

on ineffective assistance in deciding whether to plead guilty or go to trial, a movant

---

[3]     To the extent Bello objects to the Magistrate Judge's finding that she
rejected the plea offer, Bello's argument that she could not have rejected it because
she never saw the *written* plea offer, is simply illogical.  It is clear that Bello was,
at least, aware of the offer before trial and that it had been rejected.  Bello does not
claim, and the record does not support, that she told Hashimi that she was
interested in pleading guilty and accepting the Government's plea offer.

"must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial."

Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (alterations in original).

In the context of a rejected plea offer, a movant

> must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

Osley v. United States, 751 F.3d 1214, 1223 (11th Cir. 2014) (quoting

Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012)).  The Eleventh Circuit has

consistently held that a movant's "after the fact testimony concerning his desire to

plead, without more, is insufficient to establish that but for counsel's alleged

advice or inaction, he would have pled guilty."  Diaz v. United States, 930 F.2d

832, 835 (11th Cir. 1991); see also Coulter, 60 F.3d 1499; Guerra v. Sec'y, Dep't

of Corr., 271 F. App'x 870 (11th Cir. 2008).

Here, there is no credible evidence to support that Bello was interested in

pleading guilty before, or during, trial.  In her 2255 Motion, Bello maintains the

same position she has throughout this case, namely that she "steadfastly denies that

she was ever cruel to either of the young ladies in her care; providing food and

shelter, as agreed, in return for childcare of her young child and house/yard work.

11

[Bello] also denies that her treatment of either young lady elevated her to the role of a 'human trafficker,'—one of the crimes of which she was accused and convicted by a jury." (2255 Motion at 5). Bello asserts further that, had Hashimi been effective at trial, the evidence "would have demonstrated that [Bello] may have been a difficult employer and a stern taskmistress, but much of what she did was consistent with typical Nigerian practices. Ultimately, such knowledge of Nigerian practices might well have led the jury to the proper conclusion; [sic] that [Bello] was not a human trafficker." (Reply at 9). To the extent Bello appears to assert, for the first time in her Objections, that she may have accepted the Government's plea offer if Hashimi had "adequately communicated" it to her, even accepting Bello's flawed logic,[4] her claim is not credible in view of her persistent claims of innocence, including in her 2255 Motion and Reply. See <u>Diaz</u>, 930 F.2d at 835 (rejecting defendant's claim that he would have accepted a plea agreement when he had not indicated any desire to plead guilty prior to his conviction); <u>Brooks v. United States</u>, 248 F. App'x 77, 82 (11th Cir. 2007) (record reflected no desire or intent to plead guilty, including because defendant continued to assert he

---

[4]      Bello did not assert, in any of her previous submissions, that she would have accepted the Government's plea offer. For the first time in her Objections, Bello argues that the Court should infer that Bello would have accepted the plea offer because "(1) Bello repeatedly asked to see the offer; (2) . . . one cannot accept an offer when one does not know the material terms of that offer . . .; and (3) Bello never saw the 41-month offer, but . . . Bello remained keenly interested in that offer—an indication that Bello might well have accepted that offer." (Objs. at 5).

was wrongly accused and codefendants' testimony was false); Osley, 751 F.3d at 1224 (defendant failed to show prejudice in part because his "claim that he would have pled guilty had he been properly informed [was] . . . undermined by his repeated claims of innocence"); Pericles v. United States, 567 F. App'x 776, 782 (11th Cir. 2014) ("In light of Pericles's insistence that he is innocent of the offense, there is no reasonable probability that he would have pled guilty if, before Pericles pled, his attorney had reviewed his criminal history."). Bello's newly-raised assertion that she was willing to plead guilty, without more, is not sufficient to show that, but for Hashimi's alleged deficient performance, Bello would have accepted the plea offer. See Osley, 751 F.3d at 1223; Diaz, 930 F.2d at 835.

Bello's statements in her 2255 Motion and Reply do not support that she would have accepted the Government's plea offer if Hashimi had effectively consulted with her. At most, it appears that Bello may have been interested in pleading guilty in exchange for a more favorable plea offer. In her 2255 Motion, Bello claims that she "would have been a strong candidate" for a plea offer, including because she "had no criminal history at the time of her indictment" and no contact with the police," and "[a]n experienced and competent defense would have pursued the offered agreement with more diligence." (2255 Motion at 9). Bello argues further that, "as a result of defense counsel's constitutionally inadequate representation, a potential plea agreement of 36 months was never

13

actively pursued by counsel, resulting in [Bello] being subjected to a jury trial which resulted in her receiving a sentence that was much longer than it needed to be." (2255 Motion at 11). It is well-established that "defendants have 'no right to be offered a plea . . . nor a federal right that a judge accept it.'" Lafler, 132 S.Ct. at 1387 (quoting Missouri v. Frye, 132 S.Ct. 1399, 1403 (2012)); see also Weatherford v. Bursey, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."); United States v. Palmer, 809 F.2d 1504, 1508 (11th Cir. 1987) ("The government was under no obligation to enter into any plea bargaining or to accept any deal offered by [the defendant].").

Bello's claim that, had Hashimi been more effective, the Government would have offered, and she would have accepted, a more favorable plea deal, is rank speculation and is not sufficient to support that Bello suffered prejudice because of Hashimi's alleged ineffectiveness. See Strickland, 466 U.S. at 687; Osley, 751 F.3d at 1223; Britt v. United States, No. CIV.A. 12-0173-KD-C, 2013 WL 3930083, at *8 (S.D. Ala. July 30, 2013) (The defendant's "rank and conclusory speculation that his attorney could have bargained with the government for a more favorable plea agreement fails") (citations omitted); Hernandez v. United States, No. 6:10-CV-759-ORL-28, 2012 WL 728208, at *4 (M.D. Fla. Mar. 6, 2012) (rejecting ineffective assistance claim based on "speculative premise that he would

14

have received a favorable plea agreement from the Government if counsel had negotiated with the United States Attorney"). What it does show is that Bello did not accept a 41 month plea offer. Having conducted its *de novo* review, the Court overrules Bello's objection on this ground.

          b.     Evidentiary hearing

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See 28 U.S.C. § 2255(b); Lynn v. United States, 365 F.3d 1225, 1239 (11th Cir. 2004) (prisoner seeking collateral relief "is not entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics."). Bello's 2255 Motion and her request for an evidentiary hearing are not supported by more than conclusory allegations, and the record in this case shows that Bello is not entitled to relief on any ground that she raised. Having conducted its *de novo* review, the Court overrules Bello's objection on this ground.

          2.     Unobjected-to Portions of the R&R

Bello did not object to the Magistrate Judge's conclusion that she is not entitled to relief on her claim that Hashimi was ineffective in failing to call a witness because Bello fails to identify what the witness's testimony would have been, and Bello's conclusory assertions that the witness was "a powerful alibi witness" and that she and other "possible defense witnesses . . . could have refuted

15

every element of the government's case," were not sufficient to support a claim for ineffective assistance of counsel.  (R&R at 12-13).  The Magistrate Judge concluded that Bello is not entitled to relief on this ground, and the Court finds no plain error in these findings and recommendation.  See Miranda v. United States, 433 F. App'x 866, 869 (11th Cir. 2011) ("'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision' that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective.") (quoting Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004)); Greenwood v. DeLoach, No. 2:05-CV-733-MHT, 2008 WL 150047, at *10 (M.D. Ala. Jan. 14, 2008) ("[T]o succeed on a challenge to trial counsel's failure to call a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony which may be presented in the form of actual testimony by the witness or through a witness's affidavit.") (citing United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)).[5]

Bello did not object to the Magistrate Judge's conclusion that she is not entitled to relief on her claim that Hashimi was ineffective for not filing written motions for discovery, not moving to suppress pictures of Laome and Dupe showing their alleged injuries inflicted by Bello, and not obtaining copies of

---

[5]    It is unlikely that any alibi testimony would have been "powerful" because Bello did not commit her crimes on a single date, and it was undisputed that she was home with Laome and Dupe for significant periods of time.  (R&R at 13 n.5).

Bello's passport and other documents until three weeks before trial.  (R&R at 14).

The Magistrate Judge found that Bello did not identify what Hashimi should have

sought in discovery, the grounds on which she could have moved to suppress the

pictures, or why no competent lawyer would have obtained the travel documents as

late as three weeks before trial.  (Id.).  The Magistrate Judge found further that

Bello failed to show that she was prejudiced by Hashimi's alleged failures because,

even if the pictures had been excluded or Hashimi had moved for discovery earlier,

the evidence was overwhelming as to Bello's guilt.  (Id.).  The Magistrate Judge

concluded that Bello is not entitled to relief on this ground, and the Court finds no

plain error in these findings and recommendation.  See Strickland, 466 U.S. at 689

(range of constitutional assistance is "wide" and courts must be "highly

deferential" and "indulge a strong presumption that counsel's conduct falls within"

range); Griffin v. United States, 204 F. App'x 792, 795 (11th Cir. 2006) ("It is not

enough to show that there was an omission or that counsel could have done more;

[movant] must show that this omission fell below the range of acceptable

professional assistance.") (citing Chandler v. United States, 218 F.3d 1305, 1313

(11th Cir. 2000)).

Bello did not object to the Magistrate Judge's conclusion that she is not

entitled to relief on her claim that Hashimi was ineffective in failing to properly

cross-examine witnesses.  (R&R at 15).  The Magistrate Judge found that the trial

17

transcript supports that Hashimi aggressively cross-examined the Government's witnesses and effectively impeached some witnesses, including Laome and Dupe, including on their motive for waiting so long to complain to others about Bello and how their complaints furthered their efforts to obtain asylum in the United States. The Magistrate Judge found that the record simply does not support that Hashimi's performance at trial was deficient, and even if it was, Bello fails to show that she was prejudiced by Hashimi's performance or her alleged failure to interview, even if that could have occurred, the Government's witnesses before trial.  (Id. at 15-16).  The Magistrate Judge concluded that Bello is not entitled to relief on this ground, and the Court finds no plain error in these findings and recommendation. See Strickland, 466 U.S. at 694.

Bello did not object to the Magistrate Judge's conclusion that she is not entitled to relief on her claim that Hashimi was ineffective in failing to present certain evidence allegedly favorable to Bello.  The Magistrate Judge found that Hashimi explored Laome's and Dupe's "self-serving motivations" on cross-examination, and "the complete lack of medical evidence" to support their claims of abuse was established by their testimony on direct examination and thus not necessary to address on cross-examination.  (Id. at 17).  The Magistrate Judge also found that Hashimi effectively challenged the Government's argument that Laome and Dupe had to escape from Bello's home, including because she elicited

testimony that they were sometimes left alone while Bello was not home and sometimes used Bello's telephone.  (R&R at 17-18).  The Magistrate Judge found that, even if Hashimi could have asked more questions on cross-examination, Bello fails to show that Hashimi's performance was deficient and she fails to show a reasonable probability that her failure to do so affected the outcome of the trial. (Id. at 18).  The Magistrate Judge concluded that Bello is not entitled to relief on this ground, and the Court finds no plain error in these findings and recommendation.  See Strickland, 466 U.S. at 694; Griffin, 204 F. App'x at 795.

Bello did not object to the Magistrate Judge's conclusion that she is not entitled to relief on her claim that Hashimi was ineffective in failing to file "substantial objections" the Government's motion *in limine* that prevented Bello from introducing at trial evidence of Nigerian culture.  (R&R at 19).  The Magistrate Judge found that Hashimi vigorously opposed the Government's motion in her response and Bello does not identify what more Hashimi could or should have done to oppose the motion.  The Magistrate Judge found that Bello fails to show that Hashimi's performance was deficient or that the Court would have allowed the cultural evidence if Hashimi had done more.  (Id.).[6]  The Magistrate

---

[6]     At the pretrial conference, the Court summarized the case law regarding admissibility of evidence of the culture and customs of another country, and held: "Because it's not a defense to these crimes that what might happen in another country and be countenanced in another country, is not a defense to a charge

Judge concluded that Bello is not entitled to relief on this ground, and the Court finds no plain error in these findings and recommendation.  See Strickland, 466 U.S. at 694; Griffin, 204 F. App'x at 795; Bravo-Zamora v. United States, No. 1:11CV494-MHT, 2013 WL 4851609, at *6 (M.D. Ala. Sept. 10, 2013) ("The fact that [counsel's] arguments . . . were not successful does not entitle [movant] to any relief based on this claim of ineffective assistance of counsel.").[7]

D.    Certificate of Appealability

A district court "must issue or deny a certificate of appealability [under 28 U.S.C. § 2253(c)] when it enters a final order adverse to the appellant."  See R. Governing § 2255 Cases 11(a).  A certificate of appealability may issue only when the movant makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

---

brought against a person in the United States, the government's motion is granted." ([104] at 3-6) (citing United States v. Booker, 655 F.2d 562 (4th Cir. 1981); United States v. Rubio-Villareal, 927 F.2d 1495 (9th Cir. 1991); United States v. Ruelas-Altamirano, 463 F.2d 1197 (9th Cir. 1972); United States v. Chen, 754 F.2d 817 (9th Cir. 1985)).

[7]    Even if Bello objected to the entire R&R and the Court conducted a complete *de novo* review, the Court would reach the same conclusions.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Jones v. United States, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying Slack in a Section 2255 case).

The Court concludes that Bello has not made a substantial showing of the denial of a constitutional right.  No reasonable jurist could argue that Bello has received ineffective assistance of counsel, for the reasons discussed above.  A certificate of appealability is required to be denied.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Bidemi Bello's Objections [116] to the R&R are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Linda T. Walker's Final Report and Recommendation [114] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Bello's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [101] is **DENIED**.

**SO ORDERED** this 14th day of October, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE